IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LARRY HUTCHINGS,<br><br>                          Petitioner,<br><br>v.<br><br>ROBERT POWELL, et al.,<br><br>                          Respondents. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:22-cv-505-TS<br><br>District Judge Ted Stewart |

In this federal habeas corpus action, *pro se* inmate Larry Hutchings ("Petitioner") attacks his incarceration by the state of Utah for being violative of his Constitutional rights. Petitioner's claims are lodged under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See*, Petition, at 1 (ECF No. 5.) *see also*, 28 U.S.C.S. §2254 (2024). Petitioner's claims are subject to a one-year period of limitations. *See*, 28 U.S.C.S. § 2244(d)(1) (2024).

Petitioner asserts four grounds for relief in his AEDPA petition (the "Petition"). Petitioner's first ground for relief alleges that the terms of his parole violate Constitutional protections from application of ex post facto modification of the punishment associated with his crime at the time it was committed. (ECF No. 5, at 6-7.) Petitioner's second ground argues that he was denied adequate representation of counsel because his counsel refused to advance Petitioner's Constitutional rights and that Petitioner was denied counsel in his post-petition proceedings. *Id*. at 9. Petitioner's third ground for relief claims that he was denied Due Process because he has been imprisoned since December 1, 2019 without charges filed against him and without a final parole revocation hearing. *Id.* at 11. Petitioner's fourth grounds alleged that he was denied due process because he was denied a timely parole revocation hearing. *Id*. at 11, 13.

1

Respondent moves to dismiss the claims on the basis that his second, third and fourth claims are procedurally defaulted because Petitioner failed to exhaust his state remedies. (ECF No. 18, at 5-7.) Respondent moves to dismiss Petitioner's first claim on the basis that the claim was previously raised but unexhausted. *Id*. at 7-10. In addition, the court ordered Petitioner to show cause why the first ground for relief should not be dismissed as untimely. (ECF No. 32.)

Having reviewed Petitioner's filings, the court finds that Petitioner's ex post facto claim is untimely, the ineffective assistance of counsel claim is vague and conclusory and the due process claims are unexhausted. For those reasons, the Petition for habeas relief is dismissed without prejudice.

## I. RELEVANT TIMELINE

• 7/7/92    Petitioner pled guilty to two counts of sexual abuse of a child, both second degree felonies (the "1992 Convictions"). (ECF No. 19-16, at 3.)

• 9/4/07    Petitioner convicted of aggravated assault, a second degree felony, and criminal mischief, a misdemeanor (the "2007 Convictions"), both acts having been committed while Petitioner was on parole for the 1992 Convictions. Minutes (ECF No. 8-4, at 1.)

• 10/22/07  Petitioner sentenced to 1-15 year indeterminate term for the 2007 Convictions, to run consecutively to his reincarceration for the 1992 Convictions. *Id.* at 1- 2.

• 11/13/09  Utah Court of Appeals affirmed the 2007 Convictions. *State v. Hutchings*, 2009 Utah App. LEXIS 342, *5.

• 10/21/10  Petitioner's sentence for the 1992 Convictions expired, and his sentence for the 2007 Convictions commenced. (ECF No. 19-16, at 3.)

• 8/10/12   Utah Supreme Court affirms (on alternate grounds) the 2007 Convictions. *State v. Hutchings*, 2012 UT 50, at ¶ 30, 285 P.3d 1183.

• 11/8/12   Judgment for the 2007 Convictions becomes final. *See* U.S.C.S. Supreme Ct R 13(1) ("Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals (including the United States Court of Appeals for the Armed Forces) is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment.")

• 11/27/12    Petitioner offered "Standard Parole" for the 2007 Convictions to commence on January, 1, 2013. The Utah Board of Pardons and Parole (the "Board") calculates Petitioner's sentence to expire on April 4, 2024. (ECF No. 8-8.)

• 1/8/13    Petitioner released on conditional parole for the 2007 Convictions.

• 1/9/13    According to Petitioner, his parole agent verbally assured him that his parole for the 2007 Convictions would be governed by the 2007 version of the Utah parole statute, meaning that his parole would expire after three years without a violation. (ECF No. 34-8, at 2); *see* U.C.A. § 76-3-202(1)(b) (2007).

• 1/8/16    Petitioner's term of parole would have expired under the 2007 version of the Utah parole statute. *See* U.C.A. § 76-3-202(1)(b) (2007).

• 10/31/16    According to Petitioner, sometime during the month of October 2016, he was notified by representatives of the Board that they would retroactively apply the 2008 version of the Utah parole statue, meaning that he would remain on parole through the maximum term of his sentence regardless of parole violations. *See* U.C.A. § 76-3-202(1)(b)(2008).

     Petitioner filed a letter with the Board dated October 31, 2016 arguing that the 2007 version of the parole statute should control because he was convicted and sentenced prior to the amendment. (ECF No. 34-4.)

• 11/7/16    The Board issued a warrant for Petitioner's arrest for two counts of failure to comply with the terms of parole for the 2007 Convictions. (ECF No. 18-6.)

• 12/14/16    The Board held a parole revocation hearing. Petitioner was represented by counsel and pled no contest to two parole violations. Counsel for Petitioner asserted the claim that his parole had statutorily terminated under the 2007 version of the parole statute because application of the 2008 version was an ex post facto violation. (ECF No. 8-5.)

• 12/15/16    The Board revoked Petitioner's parole, rejecting Petitioner's ex post facto claim and triggering the 365-day AEDPA period of limitations for Petitioner's ex post facto claim. *See* ECF No. 19-16; U.C.A. §77-27-5(3)(a)(i); 28 U.S.C.S. § 2244(d)(1) (2024).

• 3/16/17    Petitioner filed Petition for Extraordinary Relief asserting his ex post facto claim that his parole for the 2007 Convictions should have terminated automatically per the 2007 version of the parole statute and tolling the AEDPA period of limitations after 90 days. (ECF No. 20-1.)

• 7/17/17    Petitioner's parole reinstated.

• 8/25/17     Utah District Court dismissed Petition for Extraordinary Relief. *Id.*

• 11/27/17    Utah Court of Appeals affirmed dismissal of Petition for Extraordinary Relief.
              (ECF No. 19-17.)

• 12/27/17    Judgment on the Petition for Extraordinary Relief became final after the period to
              petition for certiorari in the Utah Supreme Court expired. *See* Utah R. App. P. 48(a)
              ("A petition for a writ of certiorari must be filed with the Supreme Court clerk
              within 30 days after the Court of Appeals' final decision is issued.")

• 12/28/17    The ADEDPA period of limitation for the claims presented in the Petition for
              Extraordinary Relief resumed with 275 days remaining.

• 9/3/18      ADEDPA period of limitation for the claims presented in the Petition for
              Extraordinary Relief expired.

• 12/3/19     The Board issued a Warrant for Petitioner's arrest pursuant to evidence obtained
              during a parole search. (ECF No. 8-33.)

• 6/9/20      Petitioner charged with two counts of failure to register in Utah Third District Court
              Case No. 201906587 (the 2020 Charges). (ECF No. 18-1.)

• 6/12/20     Board held a parole violation hearing. Petitioner denied all allegations. Board found
              probable cause to hold Petitioner in custody due to the pending 2020 Charges and
              continued Petitioner's parole violation review until September 2020. (ECF No. 8-
              36.)

• 1/25/21     Petitioner, represented by counsel, pled not guilty at his arraignment on the 2020
              Charges. *State v. Hutchings*, No. 201906587, docket no. 34 (Utah Dist. Ct. filed
              Jan. 25, 2021.)

• 5/5/21      Petitioner, although represented by counsel, filed a pro se motion to dismiss the
              2020 Charges asserting his ex post facto claim. *Id.* at Nos. 41-46.

• 6/1/21      Board continued Petitioner's parole revocation hearing until July 2021 pending
              adjudication of 2020 Charges. (ECF No. 8-37.)

• 8/24/21     Trial judge denied Petitioner's pro se motion to dismiss the 2020 Charges. ECF No.
              18-2, at 1; *State v. Hutchings*, No. 201906587, docket no. 60 (Utah Dist. Ct. filed
              Aug. 24, 2021.)

• 9/23/21     Petitioner filed pro se notice of appeal seeking relief from denial of the motion to
              dismiss the 2020 Charges. *Id.* at docket no. 64.

• 10/28/21    Petitioner filed a petition for interlocutory appeal directly to the Utah Supreme
              Court seeking relief from the district court's denial of his motion to dismiss the

2020 Charges (prior to the Court of Appeals' decision on Petitioner's pending motion in that court seeking the same relief). *See* ECF No. 19-1; ECF No. 18-2.

- 11/12/21   Utah Court of Appeals summarily dismissed Petitioner's appeal of the motion to dismiss the 2020 Charges because the motion did not challenge a final appealable order. (ECF No. 18-2.)

- 12/9/21   Utah Court of Appeals denied Petitioner's motion for appointment of counsel in the Petition for Extraordinary Relief for the 2007 convictions because there is no right to counsel in a civil case. (ECF No. 8-31 citing *Schwarz v. Duncan*, 2000 UT App 172, para. 4 (mem.) (per curiam).)

    Board continued Petitioner's parole revocation hearing until January 2022 pending adjudication of the 2020 Charges. (ECF No. 8-38.)

- 12/16/21   Utah Supreme Court affirmed dismissal of Petition for Extraordinary Relief. *Hutchings v. Utah*, No. 20210813, (Utah Sup. Ct. Dec. 16, 2021) (docket).

- 2/14/22   Petitioner filed a petition for certiorari asking the Utah Supreme Court to review both the denial of his motion to dismiss the 2020 Charges and the dismissal of his 2017 Petition for Extraordinary Relief for the 2007 Convictions. (ECF No. 19-2.)

- 3/18/22   Utah Supreme Court denied a writ of certiorari for the motion to dismiss the 2020 Charges. The caption of the denial contains only the case number for the 2020 Charges, but not the Petition for Extraordinary Relief. (ECF No. 18-3.)

    The Board continued Petitioner's parole revocation hearing until July 2022 pending adjudication of 2020 Charges. (ECF No. 8-40.) The Board ordered Petitioner to notify the Board when 2020 charges are adjudicated. *Id*.

- 8/5/22   Petitioner filed his AEDPA Petition. (ECF No. 5.)

- 3/24/23   Respondent filed motion to dismiss the Petition. (ECF No. 18.)

- 6/12/23   The Utah District Court dismissed the 2020 Charges with prejudice on the State's motion to withdraw in the interests of justice due to time served.) *State v. Hutchings*, No. 201906587, docket no. 228.

- 2/1/24   This court ordered Petitioner to show cause why his first ground for relief should not be dismissed as untimely. (ECF No. 32.)

## II. BACKGROUND

On July 7, 1992, Petitioner pled guilty to the 1992 Convictions, two counts of sexual abuse of a child, both second degree felonies. For each count, Petitioner was sentenced to an

5

indeterminate term of one to fifteen years in the Utah State Prison, to run concurrently. On April

6, 2006, while Petitioner was released on parole for the 1992 Convictions, Petitioner committed

an aggravated assault and criminal mischief. *Utah v. Hutchings*, No. 6190246 (Utah 3rd Dist.

2007) (ECF No. 18-5, at 17-18.) Petitioner was sentenced to an indeterminate term of one to

fifteen years, to run consecutively to the time he was serving for the 1992 Convictions. *Id*. at 18.

At the time Petitioner committed his crimes in 2006, the Utah parole statute provided that parole

from a sentence for an indeterminate term would automatically terminate after three years

without violation:

> (1) Except as otherwise provided in this section, every person
> committed to the state prison to serve an indeterminate term and
> later released on parole shall, upon completion of three years on
> parole outside of confinement and without violation, be terminated
> from his sentence unless the person is earlier terminated by the
> Board of Pardons and Parole.

Ruling and Order Dismissing Petitioner's PCRA petition (ECF No. 18-8, quoting U.C.A. § 76-3-

202 (2007); *see also* ECF No. 8-12. However, in 2008, after Petitioner's sentencing, but prior to

being granted parole, the Utah legislature amended the parole statute, requiring persons

convicted of certain crimes to serve parole for the duration of their maximum sentence regardless

of whether they committed any violations:

> (1)(b) Every person committed to the state prison to serv an
> indeterminate term and later released on parole on or after July 1,
> 2008, and who was convicted of any felony offense under Title 76,
> Chapter 5, Offenses Against the Person… shall complete a term of
> parole that extends through the expiration of the person's maximum
> sentence, unless the parole is earlier terminated by the Board of
> Pardons and Parole.

*Id*. at 6, quoting U.C.A. §76-3-202 (2008).

On November 27, 2012 the Board granted Petitioner parole, to commence on January 8,

2013. (ECF No. 34-8.) The conditions of parole listed on the parole rehearing minutes included

"Standard Parole," "Sex Offender A" and payment of restitution, among other things. *Id*. The Board calculated Petitioner's sentence to expire on April 4, 2024. *Id*. Petitioner claims that he was given repeated verbal assurances that the terms of his parole would be governed by the 2007 version of the parole statute, meaning that his parole would be terminated after three years without violation. (ECF No. 34-8, at 2.) Petitioner also claims that in October 2016 he sought clarification of his parole status and was told that the Board then understood his parole to be governed by the 2008 version of the parole statute, meaning that he would remain on parole for the duration of his maximum sentence, and that he had violated his parole by failing to comply with his registration requirements. *Id*. at 4-5. Petitioner supports these claims with a letter to the Board dated October 31, 2016 memorializing the alleged October conversation and asserting his position that application of the 2008 parole statute to his 2007 conviction was an ex post facto violation. (ECF No. 34-4, at 2-3.)

On November 7, 2016, the Board issued a warrant for Petitioner's arrest for failure to comply with the terms of parole. (ECF No. 8-10.) Petitioner was arrested on November 16, 2016. *Id*.

After his arrest and reincarceration, Petitioner filed a petition for extraordinary relief (the "Petition for Extraordinary Relief") arguing that 1) the Board failed to act in a statutory manner when they failed to terminate his parole as required by the 2007 version of the parole statute; 2) the Board abused its discretion by extending parole past its statutory termination; 3) The Board abused its discretion by issuing the warrant in November 2016 and revoking parole after it had expired by operation of law; 4) the Warden acted without jurisdiction by requesting that the Board issue a warrant after the statutory termination of his parole; and 5) the Board acted outside its jurisdiction in amending the amount of restitution due under the parole agreement outside the

one-year statutory limit. (ECF No. 18-8, at 4-5.) Petitioner later amended his claim to add two more grounds for relief: 6) the Board exceeded its jurisdiction by imposing "special conditions of parole beyond that set by statute of law;" and 7) The Board exceeded their statutory authority "by lengthening his term of incarceration by an indeterminate amount of time." *Id.* at 5. Petitioner's parole was reinstated in July 2017. The District Court rejected Petitioner's claims and the Utah Court of Appeals affirmed. (ECF No. 18-9.) Petitioner neglected to file a timely petition for certiorari review to the Utah Supreme Court. *See* Utah R. App. P. 48(a) ("A petition for a writ of certiorari must be filed with the Supreme Court clerk within 30 days after the Court of Appeals' final decision is issued.")

On December 1, 2019, the Board conducted a parole search and discovered evidence of multiple parole violations. *State v. Hutchings*, No. 201906587, docket no. 1, at 2 (filed June 9, 2020.) On June 9, 2020, Petitioner was charged with two third degree felony counts of failure to register as a sex offender in violation of U.C.A. §77-41-107(1)(a) (the 2020 Charges). (ECF No. 18-1.) Petitioner moved to dismiss the charges, based on his argument that his requirement to register had expired with his parole under the 2007 version of the parole statute. The motion to dismiss was denied on August 24, 2021. (ECF No. 18-2, at 1.)

Petitioner appealed. *State v. Hutchings*, No. 201906587, docket no. 64 (filed Sept. 23, 2021.) However, before the Court of Appeals had rendered a decision on the appeal, Petitioner filed a "Petition for interlocutory Appeal And Or Writ for Extraordinary Relief" [sic] directly to the Utah Supreme Court. (ECF No. 19-1.) On November 12, 2021, the Utah Court of Appeals dismissed without prejudice Petitioner's appeal of the denial of his motion to dismiss because Petitioner still had claims pending before the trial court. (ECF No. 18-2, at 1-2.) The Utah Supreme Court denied the petition for interlocutory appeal on December 16, 2021. *Hutchings v.*

*Utah*, No. 20210813, (Utah Sup. Ct. Dec. 16, 2021) (docket).

On February 14, 2022, Petitioner filed a petition for certiorari to the Utah Supreme Court, the caption for which indicated two cases: 20210813-CA (pertaining to the motion to dismiss the 2020 Charges) and 20170777-CA (pertaining to the 2017 Petition for Extraordinary Relief.) (ECF No. 19-2.) The petition for certiorari presented four questions for review: 1) Did the Utah Court of Appeals commit plain error by reviewing his claims in the 2020 Charges under the rubric of civil law? (*id*. at 21); 2) In both the case related to the Petition for Extraordinary Relief, and the case related to the 2020 Charges, did the Board and the Utah courts deny petitioner's Constitutional protections against ex post facto laws by applying the 2008 version of the parole statute to his 2007 conviction? (*id*. at 21-22); 3) In both the case related to the Petition for Extraordinary Relief, and the case related to the 2020 Charges, did the Utah courts violate petitioner's Constitutional right to counsel? (*id*. at 22); and 4) Did the Board and the Third District Court deny petitioner's right to due process by failing to provide a final parole revocation hearing within 777 days after reincarceration and failing to hold an arraignment within 203 days of incarceration? (*Id*. at 23.) By the time Petitioner filed the petition for certiorari, the period to obtain review of the 2017 Petition for Extraordinary Relief had already expired more than four years prior. *See* ECF No. 19-17*;* Utah R. App. P. 48(a) ("A petition for a writ of certiorari must be filed with the Supreme Court clerk within 30 days after the Court of Appeals' final decision is issued.") On March 18, 2022, the Utah Supreme Court denied certiorari in the case related to the 2020 Charges without mention of the case numbers for the 2017 Petition for Extraordinary Relief.  (ECF No. 18-3.)

On or around August 5, 2022, Petitioner filed the Petition seeking federal relief from his Utah convictions under the AEDPA. *See* 28 U.S.C.S. § 2254 (2024). Petitioner asserted four

grounds for relief 1) Did application of the Utah parole statue, as amended after his sentencing, violate Constitutional protections against application of *ex post facto* laws? (ECF No. 5, at 6-7); 2) Did appointed counsel provide Constitutionally ineffective assistance by failing to assert Petitioner's Constitutional rights? (*Id*. at 9); 3) Was Petitioner denied Due Process because he was held without charges between December 1, 2019 and June 22, 2020? (*Id*. at 11); and 4) Was Petitioner denied Due Process because he was held without a final parole revocation hearing since December 1, 2019? *Id*. at 13.

### III. PETITIONER'S EX POST FACTO CLAIM IS UNTIMELY

Federal statute sets a one-year period of limitation to file a habeas corpus petition. 28 U.S.C.S. § 2244(d)(1) (2024). The period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." U.S.C.S. § 2244(d)(1)(A) (2024). Alternatively, the period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C.S. § 2244(d)(1)(D) (2024). In this context, the Tenth Circuit Court of Appeals has defined due diligence as "an 'objective standard' that refers to when a plaintiff 'could have' discovered the pertinent facts, not when [he] actually discovered them." *Madrid v. Wilson*, 590 F. App'x 773, 776 (10th Cir. 2014) (quoting *United States v. Denny*, 694 F.3d 1185, 1189 (10th Cir. 2012)). Under Utah law, a decision by the Board regarding "pardon, parole, commutation, or termination of an offender's sentence" is final and not subject to judicial review. U.C.A. §77-27-5(3)(a)(i).

Petitioner's *pro se* pleadings are entitled to liberal construction. *See, Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed.") (internal quotations omitted) (internal citations omitted.)

*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.") "Nevertheless, the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations." *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992).

### A. Statutory Tolling

The limitation period "is tolled or suspended during the pendency of a state application for post-conviction relief properly filed during the limitations period." *May v. Workman*, 339 F.3d 1236, 1237 (10th Cir. 2003) (citing 28 U.S.C.S. § 2244(d)(1)). A "state postconviction application 'remains pending' 'until the application has achieved final resolution through the State's postconviction procedures.'" *Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (quoting *Carey v. Saffold*, 536 U.S. 214, 220 (2002)); *see also Fisher v. Raemisch*, 762 F.3d 1030, 1032 (10th Cir. 2014). Once the post-conviction case ends in state court, the one-year limitation period begins to run again. *See Holland v. Florida*, 560 U.S. 631, 638 (2010).

Tolling, however, does not revive the limitations period—i.e., restart the clock at zero. It serves only to suspend a clock that has not already run. *See id*.; *Fisher v. Gibson*, 262 F.3d 1135, 1142-43 (10th Cir. 2001); *see also Laws v. LaMarque*, 351 F.3d 919, 922 (9th Cir. 2003). Thus, any time between when a petitioner's direct appeal becomes final and when he files his petition for state post-conviction relief is counted in the limitations period. And, any time between when the state post-conviction action concludes and before a petitioner's habeas petition is filed also counts toward the limitations period because state-collateral review only pauses the one-year

period; it does not delay its start. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) ("[P]roper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run.").

In other words, time elapsing after a petitioner's conviction becomes final on direct review, but before a state post-conviction petition is filed, and time after final disposition of the petitioner's post-conviction proceedings, but before the filing of the federal habeas petition, aggregate to count against the one-year-limitation period. *See Sutton v. Cain*, 722 F.3d 312, 316 n.6 (5th Cir. 2013) ("To calculate when the limitations period has run, we aggregate the time between (i) the date the petitioner's conviction became 'final' and the date the petitioner filed his state [post-conviction] application; and (ii) the date the state [post-conviction] process concluded and the date the petitioner filed his federal habeas petition.").

### B. Equitable Tolling

Equitable tolling may also suspend the statutory period. "Equitable tolling is 'a judicially-crafted stopping of the clock' that" is applied "'only in rare and exceptional circumstances.'" *United States v. Barger*, 784 F. App'x 605, 607 (10th Cir. 2019) (unpublished) (quoting Fisher, 262 F.3d at 1143); *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000)). Equitable tolling "will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Calderon v. U.S. Dist. Ct.*, 128 F.3d 1283, 1288 (9th Cir. 1997) (citation omitted). A petitioner is only entitled to equitable tolling if he shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Examples warranting equitable tolling are "'when an adversary's conduct . . . prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period.'" *Stanley v. McKune*, 133 F. App'x 479, 480 (10th Cir. 2005) (quoting *Gibson*, 232 F.3d at 808 (citation omitted)).

Meanwhile, "equitable exception" refers to "actual innocence" that "'serves as a gateway through which a petitioner may pass' . . . to overcome . . . his failure to abide by the federal statute of limitations in order to have his . . . claim[s] heard on the merits." *Fontenot v. Crow*, 4 F.4th 982, 1030 (10th Cir. 2021) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)).

On both grounds, Petitioner "has the burden" of showing equitable tolling or an equitable exception applies. *Lovato v. Suthers*, 42 F. App'x 400, 402 (10th Cir. 2002) (unpublished).

### C. Analysis

This court ordered Petitioner to show cause why his first ground for relief should not be dismissed as untimely. (ECF No. 32.) Petitioner declined to petition the Utah Supreme Court to review the denial of his ex post facto claims in 2017. Meanwhile, Petitioner's AEDPA period of limitations ran and expired. Petitioner fails to explain why he did not present the claims in his Petition for Extraordinary Relief to the Utah Supreme Court until February 14, 2022, more than four years after the period to seek review had lapsed. Therefore Petitioner fails to show cause why his first ground for relief should not be dismissed.

Petitioner argues that his first ground for relief should not be dismissed because he was not told that his parole would be subject to the amended parole statue until October 2016. *See* ECF No. 34-8, at 4. It is true that the documentation of Petitioner's 2012 parole agreement does not state explicitly which version of the parole statute would control, nor whether he would remain on parole through the duration of his maximum sentence. *See* ECF Nos. 8-8; 34-2. On

one hand, it seems unlikely that in 2012, the Board would describe his parole simply as "Standard Parole" without additional clarification if the terms were to be governed by a statute that had been amended more than four years prior. *See* ECF No. 8-8. Furthermore, in Petitioner's revocation hearing on December 14, 2016, neither Petitioner, nor his attorney claimed that he had been explicitly told that the 2007 statute would apply.[1] (ECF No. 8-5.) On the other hand, Petitioner claims that he received multiple verbal assurances prior to October 2016 that the terms of his parole were governed by the 2007 version of the parole statute. (ECF No. 34-8, at 2-4.) Petitioner arguably behaved consistent with the understanding that his parole expired in January 2016. Petitioner complied with his registration requirements until after January 2016, when he believed his parole terminated by operation of law. Likewise, Petitioner's letter to the Board in October 2016 to confirm that he only recently had been informed that the Board considered his Parole to be governed by the parole statute as amended in 2008, and asserting his belief that it should be governed by the version of the statute in effect at the time of his conviction and sentencing is plausibly consistent with his understanding that the 2007 version had been operable. *See* ECF No. 34-4. It is possible that Petitioner believed that his parole would terminate after three years without violation simply because he was unaware of the 2008 amendment to the parole statue. However, it is also possible that at some point he was told that the 2007 statute would govern. Therefore, for purposes of this analysis, the court will accept as true that Petitioner could not have discovered the factual predicate to his first ground for relief until

---

[1] Immediately after the hearing officer told Petitioner that someone in the Utah Attorney General's office would review his claim that his parole should be governed by the 2007 version of the parole statute, Petitioner interjected "Well, and it was my understanding when I seen Ms. Micklos at the Board in 2013, that the stipulation was gonna be as read, sex offender treatment evaluation completed within thirty days of release." (ECF No. 8-5 at 7-8.) If it were true that in 2012-2013 multiple parole officers had told Petitioner that that his parole would be governed by the 2007 version of the statute, that would have been a natural opportunity for Petitioner to remind the Board of that fact rather than changing the subject to his understanding of the sex offender conditions.

October 2016, the time at which Petitioner claims the Board first notified him that his parole had not expired. *See* ECF No. 34-4.

Nevertheless, even assuming that the AEDPA period of limitations on Petitioner's first cause of action did not commence until after he was rearrested in 2016, Petitioner cannot establish that his first ground for relief is timely. A period of limitations for an AEDPA claim begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." U.S.C.S. § 2244(d)(1)(A) (2024). Alternatively, the period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C.S. § 2244(d)(1)(D) (2024). On December 14, 2016, the Board held a revocation hearing. (ECF No. 8-5.) Petitioner's attorney argued that application of the 2008 version of the statute violated ex post facto protections. The Board rendered a decision on December 15, 2016, revoking Petitioner's parole and implicitly rejecting Petitioner's claim that his parole was governed by the 2007 version of the statute. (ECF No. 19-16, at 5; *see also* ECF No. 8-5, at 4-5.) The Board's decision was a final judgment, triggering the AEDPA period of limitations with regard to Petitioner's claim that the terms of his parole should be governed by the 2007 version of the parole statute. *See*, 28 U.S.C.S. § 2244(d)(1) (2024); U.C.A. §77-27-5(3)(a)(i) (A decision regarding "pardon, parole, commutation, or termination of an offender's sentence" by the Board is final and not subject to judicial review.)

Ninety days later, on March 16, 2017, Petitioner tolled the AEDPA period of limitations when he filed a Petition for Extraordinary Relief. *See* ECF No. 19-16; 28 U.S.C.S. § 2244(d)(1). Petitioner's AEDPA period of limitations remained tolled while his Petition for Extraordinary Relief was pending. *See May v. Workman*, 339 F.3d at 1237 (The limitation period "is tolled or

suspended during the pendency of a state application for post-conviction relief properly filed during the limitations period.") The district court dismissed the Petition for Extraordinary Relief on August 25, 2017. (ECF No. 19-16.) The Utah Court of Appeals affirmed the dismissal on November 27, 2017. (ECF No. 19-17.) Petitioner then had thirty days to petition the Utah Supreme Court for certiorari. *See* Utah R. App. P. 48(a) ("A petition for a writ of certiorari must be filed with the Supreme Court clerk within 30 days after the Court of Appeals' final decision is issued.") Petitioner failed to file a timely petition for certiorari.[2]

Therefore, the remaining 275 days in Petitioner's AEDPA period of limitations resumed on December 28, 2017. *See*, 28 U.S.C.S. § 2244(d)(1) (2024). The AEDPA period of limitations then expired on or around Monday, October 1, 2018. Petitioner filed his Petition on August 5, 2022, nearly four years later. Petitioner's first ground for relief, that the application of the 2008 version of the parole statute to a crime committed in 2006 violates ex post facto protections, is untimely.

Petitioner fails to establish his eligibility for an equitable exception. *See Lovato v. Suthers*, 42 F. App'x at 402; *Fontenot v. Crow*, 4 F.4th at 1030 ("equitable exception" refers to "actual innocence" that "'serves as a gateway through which a petitioner may pass' . . . to overcome . . . his failure to abide by the federal statute of limitations in order to have his . . . claim[s] heard on the merits.") Petitioner argues that he is legally innocent of the 2016 probation violations because his term of probation should have expired in January 2016. Petitioner presented this argument at his revocation hearing on December 14, 2016, again to the district

---

[2] Petitioner eventually included the case numbers for his Petition for Extraordinary Relief in the caption for his petition for certiorari for the 2020 Charges on February 14, 2022. (ECF No. 19-2.) However, by that time the period of limitations for both a petition for certiorari for the Petition for Extraordinary Relief and an AEDPA petition asserting the claims from the Petition for Extraordinary Relief had long since expired. The Utah Supreme Court rejected the petition for certiorari for the 2020 Charges without mention of the Petition for Extraordinary Relief or its case numbers. (ECF No. 18-3.)

court in 2017 and then to the Utah Court of Appeals. *See* ECF Nos. 8-5, at 3;19-16 at 5; 19-17, at 2. Each time, his claim was rejected. *Id*. Petitioner could have filed a timely petition for certiorari to the Utah Supreme Court. He did not. Instead, Petitioner accepted the decision of the Utah Court of Appeals and remained subject to the terms of his probation under the 2008 version of the parole statute. Therefore, Petitioner cannot claim actual innocence of failure to comply with the terms of his parole in 2016. Petitioner's first ground for relief is not entitled to an equitable exception from the AEDPA period of limitations.

In light of the foregoing, Petitioner's first ground for relief is untimely.

## IV. PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE VAGUE AND CONCLUSORY

Petitioner's second ground for relief argues that he was denied adequate representation of counsel because his counsel refused to advance Petitioner's Constitutional rights and that he was denied counsel. (ECF No. 5, at 9.) Respondents move to dismiss Petitioner's second cause of action without prejudice on the grounds that Petitioner failed to exhaust his state remedies. ECF No. 18, at 5. The court declines to reach Respondent's motion to dismiss Petitioner's second cause of action for failure to exhaust his state remedies because the court finds that the claims are vague and conclusory.

To establish ineffective assistance of counsel, a petitioner must show (1) deficient performance by counsel, measured by a standard of "reasonableness under prevailing professional norms;" and, (2) prejudice to the defense caused by that deficient performance. *Strickland,* 466 U.S. at 687-88. The prejudice element requires showing errors were so grave as to rob the petitioner of a fair proceeding, with reliable, just results. *Id.* Assistance of counsel can only be constitutionally defective where there is a constitutional right to counsel. *Davila v.*

*Davis*, 582 U.S. 521, 529 (2017). It is unclear whether Petitioner advances ineffective assistance of counsel as a standalone constitutional violation, or as a gateway through which he hopes to avoid procedural default of his primary argument pertaining to ex post facto application of law.

Petitioner's pro se pleadings are entitled to liberal construction. *See, Haines v. Kerner*, 404 U.S. at 520-21; *Hall v. Bellmon*, 935 F.2d at 1110 ("[I]f the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.") However, "the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations." *See Northington v. Jackson*, 973 F.2d at 1521. Furthermore, Petitioner must comply with the Rules of Civil Procedure and other applicable rules, regardless of his pro se status. *See Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

The vast majority of Petitioner's briefing and exhibits pertains to his first ground for relief. Petitioner's remaining claims are only addressed in passing. The Petition describes his second cause of action in the following terms:

> Denial of right to counsel and ineffective assistance of counsel. Appointed counsel [for the 2020 Charges] (Isaac McDougall) refused to support petitioner's assertion of constitutional protections. And Judge V. Trease [presiding over the 2020 Charges] as well as court appeals [sic] and supreme courts all refused the defendant/petitioner counsel.

ECF No. 5, at 9; *see also* ECF No. 18-4, at 4. Petitioner indicated with a check mark that he had appealed the judgment of conviction for this issue, but supplied no other responses to the prompts in the petition form pertaining to this claim. *Id.* at 9-11. Petitioner's memorandum in

support of the Petition expanded the scope of his second ground to include the trial judge in his

Petition for Extraordinary Relief:

> Did the Utah Third District Court, both the Laura Scott and V.
> Trease Courts, Utah Court of Appeals and the Utah Supreme Court
> violate the petitioners constitutionally protected right to assistance
> of counsel in Criminal Proceedings that had and continue to have
> substantial affect upon the Substantial Constitutionally protected
> rights of the petitioner? As Well as the ineffective assistance of
> counsel in raising theses claims in the Utah Third district court, The
> Utah Court of Appeals and the Utah Supreme Court and now this
> court?

ECF No. 8, at 2 (all errors in original). The memorandum later restates the issue, but adds only the

following argument:

> The Third argument is one over representation or Ineffective
> assistance of Counsel; another exemption to preservation exists
> when defense counsels failure to effectively raise an issue is
> prejudicial to the outcome." *State V. Johnson*, 416 P.3d. 443 (Ut.
> 2017), Combined with the Utah State Prison Contract Attorney's
> refusal to supply the petitioner herein with copies of statute of law.

*Id*. at 20 (errors in original).

Petitioner's claims, liberally construed, potentially assert three possible claims of

ineffective assistance of counsel. First, Petitioner seems to argue that the courts reviewing his

claims for post-conviction relief violated his Constitutional rights by declining to appoint counsel

on his behalf. However, Petitioner fails to establish a that he had a constitutional right to counsel

in his collateral attacks to his detention, and thus fails to establish constitutional violation for his

lack of representation. Although the outcomes of Petitioner's collateral attacks on his detention

determine Petitioner's liberty of Petitioner's detention, the cases are civil cases for which Petitioner

has no constitutional right to counsel. *See Coleman v. Thompson*, 501 U.S. 722, 752. ("There is no

constitutional right to an attorney in state post-conviction proceedings."); Order Denying

Petitioner's Motion for Appointed Counsel (ECF No. 9). Typically, there is no Constitutional

violation for failure to appoint counsel where there is no Constitutional right to counsel. *See Davila v. Davis*, 582 U.S. at 529; *Ross v. Moffitt*, 417 U.S. 600, 619 (1974) ("[R]espondent was denied no right secured by the Federal Constitution when North Carolina refused to provide counsel to aid him in obtaining discretionary appellate review."); Order Denying Counsel in the Petition for Extraordinary Relief Proceedings (ECF No. 8-31 (citing *Schwarz v. Duncan*, 2000 UT App 172, ¶ 4).) Petitioner fails to supply the court with sufficient argument and analysis to reach an alternative decision. Therefore, these arguments are dismissed as vague and conclusory. *See Northington v. Jackson*, 973 F.2d at 1521.

Next, Petitioner seems to assert a claim against Hon. Vernice Trease who presided over his criminal proceedings. *See* ECF Nos. 18-4, at 1; 18-5, at 1. Here again, Petitioner fails to articulate a Constitutional violation. Petitioner was appointed counsel in each proceeding. *See* ECF Nos. 18-4, at 3; 18-5, at 3. Defendant gives no specific indication how Judge Trease may have violated Petitioner's Constitutional right to an attorney. Salt Lake Legal Defenders were appointed to defend Petitioner in each case. *Id.* Petitioner fails to articulate how Judge Trease violated Petitioner's right to counsel despite having appointed counsel on his behalf. To the extent that Petitioner asserts a claim against Judge Trease, the claim is inscrutably vague and conclusory. *See Northington v. Jackson*, 973 F.2d at 1521. ("[T]he court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations.").

Finally, Petitioner alleges that the Utah State Prison Contract Attorney and Isaac McDougall, defense counsel for the 2020 Charges, provided ineffective assistance of counsel. Petitioner offers no support for his implicit contention that his relationship with the Utah State Prison Contract Attorney implicated Constitutional protections against ineffective assistance. With

regard to Mr. McDougall, Petitioner seems to suggest that Mr. McDougall's refusal to support Petitioner's pro se motion asserting his ex post facto and due process arguments against the 2020 Charges was a denial of effective assistance of counsel. However, Petitioner fails to address either element of the requisite *Strickland* standard: (1) deficient performance by counsel, measured by a standard of "reasonableness under prevailing professional norms;" and, (2) prejudice to the defense caused by that deficient performance. *Strickland,* 466 U.S. at 687-88. Nor is likely that Petitioner could establish either element because, as this decision has already determined, Petitioner accepted the terms of his parole and forfeit any ex post facto claim when he declined to appeal the Utah Court of Appeals decision in 2008. Counsel's refusal to support a non-viable claim does not amount to ineffective assistance of counsel. *Davila v. Davis,* 582 U.S. at 533 (A strategic decision to forgo a claim on appeal is only deficient performance if the claim was plainly stronger than those actually presented to the appellate court.) Nor has Petitioner supplied the court with adequate support for the due process arguments to establish that counsel's refusal to support them in the context of a parolee who had been arraigned on criminal charges was denied due process because his final parole hearing was continued during the pendency of the criminal case. Petitioner fails to address whether Mr. McDougall's refusal to advance Petitioner's ex post facto and due process claims fell below an objective standard of reasonableness, and that his refusals prejudiced defendant. *See Strickland,* 466 U.S. at 687-88. Petitioner's conclusory claims are dismissed because they fail to address relevant legal standards. *See Northington v. Jackson*, 973 F.2d at 1521.

### V. PETITIONER'S DUE PROCESS CLAIMS ARE PROCEDURALLY DEFAULTED

Petitioner's remaining arguments assert due process violations. Respondent moves to dismiss Petitioner's due process claims arguing that Petitioner failed to exhaust his state remedies. (ECF No. 18, at 5-18.)

The Petition's third ground for relief complains that he was denied due process because he "was held imprisoned for 203 days (from Dec.1 2019 to Jun. 22 2020) without bail or filed charges or having my parole revocation final hearing." (ECF No. 5, at 11.) The Petition's fourth ground for relief makes a related claim that he was denied due process because he was "never afforded a timely final revocation hearing have been held sinse [sic] December 1ˢᵗ 2019 to today absent a final revocation hearing. Having been held to conditions impacting liberty interest of parole without justification." *Id*. at 13. The memorandum in support of the Petition conflates the claims and argues only that he was denied due process because he did not receive a final parole revocation hearing. The memorandum presents the due process claim as

> The Utah Third District Courts [sic] failure to address the Utah Board of Pardons and Parole's denial of the petitioners [sic] rights to due process as set forth by Morrissey V. Brewer, <u>408 U.S. 471</u> (1972) at headnote 12; see Exhibits F, F1, F2, G, H, I, K, and 8 thru 15.
> <u>"Due process requires that parolee held pending final decision of parole board be given opportunity for hearing within reasonable time after he is taken into custody; minimal requirements include (d) right to confront and cross examine adverse witnesses, …. and Parole [sic] revocation hearing must be tendered within reasonable time after parolee is taken into custody" Id. at headnote 14.</u>
> Petitioner still after delay of over 730 days to December 1, 2021, has yet to receive a final revocation hearing. Nor has the board been able to provide a true and correct copy of a parole agreement with my signature upon it (No Valid Contract). (See Attached copies of records as supplied to me by the Utah Board of Pardons and Parole, Courts and The Utah Law Library). Documentary Evidence Supporting all claims are attached for the Courts Convenience. See Exhibits 8 thru 15

ECF No. 8, at 2. Later in the memorandum, Petitioner supplies the following analysis quoted in its entirety:

> "The Final Argument is over the Board of Pardons and Parole's continued denial of the petitioner's right's to the Protections to due process of law as set forth by the United States Supreme Courts Holdings in Morrissey V. Brewer, 408 U.S. 471 (1972); "Due process requires that parolee held pending final decision of parole

board be given opportunity for hearing within reasonable time after he is taken into custody; minimal requirements include (a) written notice of claimed parole violations; (b) disclosure of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) right to confront and cross examine adverse witnesses, unless hearing officer specifically finds good cause for not allowing confrontation; (e) "Neutral and detached" hearing body such as traditional parole board; (f) written statement by factfinders as to evidence relied on and reason for revocation." "Parole revocation hearing must be tendered within reasonable time after parolee is taken into custody." Id. at headnote 14. In United States ex rel. Buono V. Kenton, 287 F.2d. 534, 536, (2nd Cir. 1961) (delay of revocation hearing) "113 day delay unreasonable and could not be justified by administrative errors." (see petitioners motion to dismiss at page 19 No. 20) "The Utah Board of Pardons and Parole" continues to delay the petitioners revocation hearing now accumulating some 730 days to December 1, 2021, has yet to receive a final revocation hearing plus days thru October 1, 2022, this delay is and of itself is prejudicial to the petitioner and therefore runs afoul of the due Process protections. Also See Utah Board of Pardons and Parole's hearing continuances notices for prejudicial information concerning a prior conviction for which the petitioner has served the statutory maximum yet petitioner continues to be "punished" beyond the statutory maximum sentence proscribed [sic] by law. -see Exhibits H thru K, E. See Utah Code 76-3-202(3)(2007), "but not exceed the maximum term".

Id. at 20-21.

Respondent argues that Petitioner's due process claims should be dismissed without prejudice because they are unexhausted. Specifically, Respondent argues that "Petitioner's criminal case [the 2020 Charges] is in active litigation, and his parole hearing hinges on the outcome of his trial." (ECF No. 18, at 6.) Respondent argues that the claim must therefore be dismissed because the AEDPA only affords relief once there has been a final judgment and the state courts have had the opportunity to remedy the alleged defect. Id. citing 28 U.S.C. § 2254 (b)((1)(A), (c).

Petitioner's response to the motion to dismiss argues that he exhausted his due process claims through his Petition for Interlocutory Relief And Or Writ for Extraordinary Relief filed on

October 28, 2021 (ECF No. 19-1), as well as his Petition for Writ of Certiorari filed the Utah

Supreme Court on February 14, 2021. (ECF No. 19-2.) Both documents include Petitioner's due

process claims in virtually identical language to his Petition and memorandum in support.

*Compare* ECF No. 19-1, at 23; 19-2, at 23, 36, *with* ECF No. 5, at 11, ECF No 8, at 2, 20-21.

Petitioner filed the Petition on or around August 5, 2022. Respondent filed the motion to

dismiss on Mar 24, 2023. Petitioner had been arrested pursuant to a parole search in late 2019

and was being held in custody pending litigation of two felony counts of failure to register as a

sex offender in violation of U.C.A § 77-41-107(1)(a). *See State v. Hutchings*, No. 201906587,

docket no. 1 (Utah Dist. Ct. filed June 9, 2020). The parties exchanged discovery. *Id*. at docket

nos. 21 (filed October 20, 2020); 26 (filed January 5, 2021). Petitioner, represented by counsel,

pled not guilty to the two parole violations at his arraignment. *Id*. at docket no. 27 (filed January

5, 2021). Defendant repeatedly waived his right to a speedy trial. *Id*. at docket nos. 21 (filed

October 20, 2020); 26 (filed January 5, 2021). Petitioner's parole revocation hearing was

repeatedly continued because of the pendency of the 2020 Charges. (ECF Nos. 19-37; 19-38; 19-

39; 19-40.) On June 12, 2023, the 2020 Charges were dismissed on the State's motion due to the

time Petitioner had already served in the case. *State v. Hutchings*, No. 201906587, docket no.

228 (filed June 12, 2023).

## A. Procedural Default

Both of Petitioner's attempts to exhaust his due process claims by petition to the Utah

Supreme Court appear to be untimely. Petitioner's petition to the Utah Supreme Court for

interlocutory relief was filed on October 28, 2021 while his appeal was still pending before the

Utah Court of Appeals. See, ECF No. 19-1, at 27; ECF No. 8-31 (decided December 9, 2021.)

Therefore, the petition to the Utah Supreme Court for interlocutory relief was premature. Absent

"exceptional circumstances," the Utah Supreme Court will decline to consider an issue which has not been "presented to the district court in such a way that the court has an opportunity to rule on [it]." *Patterson v. Patterson*, 2011 UT 68, ¶ 12. The Utah Supreme Court denied the premature petition for interlocutory relief on December 16, 2021. *Hutchings v. Utah*, No. 20210813, (Utah Sup. Ct. Dec. 16, 2021) (docket). On the other hand, the February 14, 2022 petition for certiorari was late. When the Court of Appeals rendered a decision on the petition for interlocutory relief on December 9, 2021, Petitioner had thirty days to petition the Supreme Court for certiorari. *See* Utah R. App. P. 48(a) ("A petition for a writ of certiorari must be filed with the Supreme Court clerk within 30 days after the Court of Appeals' final decision is issued.") Petitioner filed his petition for certiorari on February 14, 2022, more than a month after the deadline had expired. *See* ECF No. 19-2, at 36. The Utah Supreme Court summarily denied the petition for certiorari. ECF No. 18-3. In each instance, Petitioner failed to properly present his due process claims to the Utah Supreme Court.

The United States Supreme Court has declared that when a petitioner has "'failed to exhaust his state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred' the claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief." *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). "The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'" *Davila v. Davis*, 582 U.S. at 527 (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

Petitioner's due process claims have not been fairly presented to the state's highest court and Petitioner would now be procedurally barred from presenting them in Utah courts. Petitioner's claims are therefore procedurally defaulted from federal consideration. *See Thomas*, 218 F.3d at 1221.

## B. Exception to Procedural Default

Procedural default may be avoided if a petitioner can demonstrate either cause and prejudice or a fundamental miscarriage of justice. *Thomas*, 218 F.3d at 1221 ("This court may not consider issues raised in a habeas petition 'that have been defaulted in state court on an independent and adequate procedural ground[] unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice.'") (quoting *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998) (alteration in original)).

### 1. Cause and Prejudice

A petitioner may be able to overcome procedural default if he can establish "cause" to excuse the procedural default and demonstrate that he suffered "actual prejudice" from the alleged error. *Davila v. Davis*, 582 U.S. at 524. "[T]o satisfy the 'cause' standard, a petitioner must show that 'some objective factor external to the defense' impeded his compliance with Utah's procedural rules." *Dulin v. Cook*, 957 F.2d 758, 760 (10th Cir. 1992) (citations omitted). Where the alleged cause and prejudice is ineffective assistance of counsel, the petitioner must satisfy both prongs of *Strickland*'s familiar two-pronged standard: (1) deficient performance by counsel, measured by a standard of "reasonableness under prevailing professional norms;" and, (2) prejudice to the defense caused by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "In the plea context, the cornerstone of ineffectiveness is whether the plea was involuntary because plea counsel's advice was below 'the range of competence

26

demanded of attorneys in criminal cases.'" *United States v. Spaeth*, 69 F.4th 1190, 1211 (10th Cir. 2023). The Supreme Court has made clear that attorney performance is strongly presumed to have been adequate. *Strickland,* 466 U.S. at 690. "Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." *Davila v. Davis,* 582 U.S. at 533. A strategic decision to forgo a claim on appeal is only deficient performance if the claim was plainly stronger than those actually presented to the appellate court. *Id*. Meanwhile, to demonstrate prejudice, "[t]he habeas petitioner must show not merely that … errors … created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (emphasis in original) (alteration in original) (quoting *United States v. Frady*, 456 U.S. 152 (1982)). The petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694. When a defendant "enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). Finally, "the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations." *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992).

### 2. Miscarriage of Justice

A petitioner may also overcome the procedural bar if he can show that his conviction resulted in a "fundamental miscarriage of justice." *See Thomas*, 218 F.3d at 1221 (alteration omitted) (citation omitted). A fundamental miscarriage of justice may be proven by actual innocence where a petitioner can show that "in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v.*

*Perkins*, 569 U.S. 383, 386-87 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). To be plausible, an actual-innocence claim must be grounded on solid evidence not adduced at trial. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citing *Schlup,* 513 U.S. at 324). The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence" presented in his habeas petition. *Id*. Because such evidence is so rare, "in virtually every case, the allegation of actual innocence has been summarily rejected." *Id.* (citation omitted).

Petitioner fails to meet the standard to excuse his procedural default. Petitioner's due process claims are conclusory and Petitioner fails to establish either cause and prejudice to excuse his default, nor that denial of relief will result in a miscarriage of justice. Petitioner argues that his parole should have terminated by operation of the 2007 version of the parole statue, but fails to explain his failure to present his ex post facto claim to the Utah Supreme Court until several years after the period to obtain relief had expired. Petitioner's argument that he was denied due process because he was held for more than 700 days without a parole revocation hearing neglects to address the due process afforded by his criminal proceedings for his parole violations. After he was arrested, he was arraigned, appointed counsel and repeatedly waived his rights to a speedy trial for his probation violations. Petitioner fails to address the process he was afforded and whether it satisfies the minimum requirements set forth in *Morrissey*. Therefore, Petitioner fails to meet the standard to excuse his procedural default.

## V. CONCLUSION

Each of Petitioner's claims are fatally defective. Petitioner's ex post facto claim is untimely; Petitioner's ineffective assistance of counsel claims are vague and conclusory;

Petitioner's due process claims are procedurally defaulted because they have not been exhausted in the Utah State Courts.

**IT IS THEREFORE ORDERED** that

1) Pursuant to the court's order to show cause (ECF No. 32), Petitioner's first cause of action is **DISMISSED WITH PREJUDICE** because it is untimely.

2) Respondents' motion to dismiss (ECF No. 18) is **GRANTED IN PART:**

• Respondent's motion to dismiss Petitioner's first (ex post facto) cause of action is **DENIED** as moot;

• Respondents' motion to dismiss Petitioner's second (ineffective assistance of counsel), third (due process) and fourth (due process) causes of action is **GRANTED**.

3) Petitioner's Motion for Summary Judgment (ECF No. 27) is **DENIED**.

4) Petitioner's Motion to dismiss Respondent's motion to dismiss (ECF No. 30) is **DENIED**.

5) The Petition for habeas corpus is **DENIED** and the action is **DISMISSED WITHOUT PREJUDICE**.

6) A certificate of appealability is **DENIED**.

This action is **CLOSED**.

DATED this 26th of March, 2024.

BY THE COURT

JUDGE TED STEWART
United States District Court